UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                     Plaintiff,

vs.

RAFAEL MARAVILLAS,

                     Defendant.

_____ /

Criminal No. 10-20338
Civil No. 14-12361

District Judge Paul D. Borman
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court are Defendant Rafael Maravillas' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. #481] and his amended motion [Doc. #502], in which he raised an additional ground for relief. The motions have been referred for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's motions be DENIED.

## I.  FACTS

Defendant was charged in a superseding indictment [Doc. #159] with Conspiracy to Travel in Interstate Commerce to Commit Murder, 18 U.S.C. § 1958

-1-

(Count One); Use of a Firearm in Furtherance of a Crime of Violence or Drug

Trafficking Offense Causing Death, 18 U.S.C. §§ 924(c) and 2 (Count Two); and

Conspiracy to Possess with Intent to Distribute 5 Kilograms or More of Cocaine,

21 U.S.C. §§ 841(a)(1) and 846 (Count Three).  On April 16, 2012, he signed a

written plea agreement [Doc. #375] in which he agreed to plead guilty to Count

Three (the cocaine conspiracy), and the government agreed to dismiss Counts One

and Two. The agreement also stated that "Defendant acknowledges that the court

may consider these other counts and the underlying facts of those counts as

relevant conduct in determining the appropriate sentence." *Plea Agreement* [Doc.

#375], Pg. ID 3530.  More specifically, the agreement provided as follows:

### Relevant Conduct

"The Parties agree that the court may consider the other counts of the superseding indictment and the underlying facts of those counts as relevant conduct in determining the appropriate sentence. Specifically, the parties agree on the following:

Co-defendants Enrique Amaya, Franklin Baquedano, Jesus Daniel Medina-Meraz, and Jose Villalon-Espinosa caused co-defendant Franklin Gonzalo Sierra-Rodriguez to travel from the State of Michigan to the State of Colorado with the intent that Sierra-Rodriguez would murder Joaquin Lucero-Carillo in violation of the laws of Michigan and Colorado.  On or about June 1, 2010, Sierra-Rodriguez shot and killed Lucero-Carillo in Littleton, Colorado.  The parties agree that this conduct was a reasonably forseeable act of others in furtherance of the conspiracy to possess with intent to deliver cocaine, specifically the murder occurred to avoid payment of

a narcotics debt." *Id*., Pg. ID 3531-32.

The parties agreed that the offense carried a statutory mandatory minimum sentence of 10 years, and that the applicable Sentencing Guidelines range, based upon the relevant conduct, was 292-365 months. *Id*. Pg. ID 3532. The parties agreed, pursuant to Fed.R.Cr.P. 11(c)(1)(C), that the sentence would not exceed 336 months. *Id*. Pg. ID 3533.

Defendant entered his guilty plea on April 16, 2012. At the plea proceeding, he acknowledged that the plea agreement included a provision that the Court could consider other counts of the superseding indictment as relevant conduct for purposes of sentencing. *Sentencing Transcript* [Doc. #376], Pg. ID 3596. The Defendant indicated that he had discussed the matter with his attorney, and that he was satisfied with his attorney's advice and service. *Id*. Pg. ID 3592-93. The Defendant answered the Court's questions as follows:

> Q:   And that conduct that- -the relevant conduct which can[1]
> be considered is that Co-Defendants Amaya, Baquedano,
> Medina-Meraz, and Villalon-Espinoza caused Mr.
> Sierra-Rodriguez to travel from Michigan to Colorado
> with the intent that Sierra-Rodriguez would murder
> Joachin Lucero-Carillo in violation of the law. You

---

[1] In the originally filed transcript [Doc. #375], this passage was erroneously transcribed as "conduct which *can't* be considered." An errata sheet was filed on October 25, 2013 [Doc. #479], correcting it to read "conduct which *can* be considered."

understand that?

A:     Yes.

Q:     And that on or about June 1, 2010, Sierra-Rodriguez did
       shoot and kill Mr. Lucero-Carillo in Littleton, Colorado.
       You understand that?

A:     Yeah.

Q:     And the parties agree this conduct of the shooting and
       killing was a reasonably foreseeable act of others in
       furtherance of the conspiracy to possess with intent to
       deliver cocaine, specifically the murder occurred to
       avoid payment of a narcotics debt? You understand that?

A:     Yes. *Id*. Pg. ID 3596-97.

The Defendant acknowledged that no promises were made to him apart from

the terms of the plea agreement. *Id*. Pg. ID 3600. His factual basis established

that he assisted Defendant Amaya in an out-of-state cocaine deal. *Id*. Pg. ID 3602.

After Defendant's guilty plea, Co-Defendant Amaya and Baquedano were

tried by a jury. Defendant Amaya was convicted of all counts, but Defendant

Baquedano was acquitted. *See Verdict Form* [Doc. #424]. On June 8, 2012,

Defendant wrote a letter to the Court [Doc. #470-1] in which he claimed that his

lawyer did not tell him that the murder would be considered as relevant conduct,

and that if he had known this, he would not have pled guilty. He did not ask to

withdraw his plea in the letter, but asked the Court to exclude the murder as

-4-

relevant conduct.

Defendant appeared for sentencing on October 30, 2012, and the Defendant's letter was discussed at that hearing. Defense counsel noted that he and his client discussed the matter at great length. *Sentencing Transcript* [Doc. #450], Pg. ID 5433. Counsel indicated his belief that the Defendant wrote the letter out of frustration, and that "there are sometimes understandable second thoughts when one has to make the best choice out of competing bad ones." *Id*. Counsel stated:

> "And it was my understanding when my conversation with my client concluded that he had no desire to change what he did in terms of accepting the Rule 11 plea agreement, entering into a guilty plea in connection with that. I also should say Mr. Maravillas has maintained for as long as I've known him that he did not knowingly involve himself in a murder conspiracy." *Id*. Pg. ID 5433-34.

The Defendant then made the following statement:

> "I understand that I signed for drug conspiracy. And afterwards I didn't have any other option besides signing because if I went to trial and lost, I would be facing life.

> "And I didn't have anything to do with the death, and I want –I'm in Your Honor's hands and I'd like to be judged about the guilt of which I've accepted responsibility." *Id*. Pg. ID 5435.

In his sentencing argument, defense counsel stressed that Defendant did not know the "precise nature" of the Colorado trip, and in fact may not have known at

all.  *Id*. Pg. ID 5452-53.  He stressed Defendant's relatively minimal involvement in the conspiracy, and recommended a sentencing range of between 15 and 18 years.  *Id.* Pg. ID 5453-57.

The Court found that a variance from the Guideline Range was appropriate, and sentenced Defendant to 228 months (19 years).  *Id*. Pg. ID 5462.

On March 3, 2014, the Sixth Circuit dismissed Defendant's appeal because his plea agreement contained a waiver of his right to appeal. [Doc. #480].

On February 6, 2018, Defendant filed an amended motion [Doc. #502] alleging that counsel was ineffective because he did not file a motion to suppress cell tower location data and pen register data.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside, or correct his sentence on the ground that the sentence was imposed in violation of the United States Constitution. "[A] defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir.1998) (internal quotation omitted); *Gall v. United States,* 21 F.3d 107, 109 (6th Cir.1994). To prevail under § 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the

verdict. *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003). Congress and the

Supreme Court have set the bar high for § 2255 petitioners. *See United States v. Frady,*

456 U.S. 152, 166 (1982) ("[T]o obtain collateral review relief a prisoner must clear a

significantly higher hurdle than would exist on direct appeal").

### III.   DISCUSSION

### A.   Motion in Doc. #481

The Sixth Amendment guarantees the accused in a criminal prosecution the right

to the effective assistance of counsel. *Strickland* v. *Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984).  *Strickland*  sets forth a two-part test for assessing claims of

ineffective assistance.  First, did the attorney make errors "so serious that counsel was not

functioning as the counsel guaranteed by the Sixth Amendment,"  466 U.S. at 687.  To

establish deficient performance under this prong of *Strickland*, the defendant must show

that his attorney's representation "fell below an objective standard of reasonableness."

*Id.*, at 688. The second prong of *Strickland* examines whether the defendant was

prejudiced by counsel's deficient performance.  To meet the prejudice standard, a

"defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Id*.  at 694.  *Strickland* stated that an attorney is "strongly presumed" to have

"rendered adequate assistance and made significant decisions in the exercise of

reasonable professional judgment." *Id*. at 690.

Where ineffective assistance is alleged in the context of a guilty plea, it must be shown that counsel's performance was deficient and that the deficient performance caused the defendant to reach a different decision regarding the plea. *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). To satisfy the "prejudice" prong of *Strickland*, the defendant must show that, but for counsel's errors, he or she would not have pled guilty, but would have insisted on going to trial. *Hill*, 474 U.S. at 58-59; *Warner* v. *United States*, 975 F.2d 1207, 1214 (6th Cir. 1992)(prejudice shown if defendant shows a reasonable probability that but for counsel's defective advice, he would not have pled guilty).

In his original motion [Doc. #481], Defendant claims that his trial counsel was constitutionally ineffective. Although he purports to list four grounds, there are, in effect, only two. First, he contends that his attorney improperly allowed the government to insert a provision into the plea agreement that would permit the Court to consider the murder conspiracy as relevant conduct, and failed to explain that provision to him. Second, he contends that counsel was ineffective at sentencing for failing to move to withdraw Defendant's guilty plea and to present evidence that the co-conspirators did not consider him part of the criminal undertaking.

As to Defendant's claim that his attorney improperly "allowed" the

-8-

government to put the relevant conduct provision in the plea agreement, or failed

to discuss or explain that provision to him, the Defendant's sworn statements at

his plea hearing tell a different story.  The Defendant testified that he had

discussed the matter with his attorney, and that he was satisfied with his attorney's

advice and service.  The Court painstakingly explained that the facts underlying

the dismissed counts of the superseding indictment, including the murder, could be

considered as relevant conduct in fashioning a sentence, and the Defendant swore

under oath that he understood and agreed.  He signed a written Rule 11 agreement

containing that provision. He indicated that he was pleading freely and voluntarily,

and that no promises had been made that were not contained in the agreement.  "A

defendant's statements at a plea hearing should be regarded as conclusive [as to

truth and accuracy] in the absence of a believable, valid reason justifying a

departure from the apparent truth of those statements." *United States v. Cinnamon*,

112 Fed. App'x 415, 419 (6th Cir. 2004)(internal quotation marks omitted)

(quoting *United States v. Estrada*, 849 F.2d 1304, 1306 (10th Cir.1988)); *see also*

*United States v. Owens*, 215 F. App'x 498, 502 (6th Cir. 2007).  At the sentencing

hearing, defense counsel stated that he and his client discussed his letter to the

Court "at great length," and noted that "there are sometimes understandable

second thoughts when one has to make the best choice out of competing bad

ones." *Sentencing Transcript* [Doc. 450], Pg. ID 5433. In terms of Defendant's

intentions regarding whether he wanted to go forward with the sentencing, counsel

added:

> "And it was my understanding when my conversation with my client
> concluded that he had no desire to change what he did in terms of
> accepting the Rule 11 plea agreement, entering into a guilty plea in
> connection with that. I also should say Mr. Maravillas has
> maintained for as long as I've known him that he did not knowingly
> involve himself in a murder conspiracy." *Id*. Pg. ID 5433-34.

Defendant voiced no objection to this statement, and in his own allocution

expressed his willingness to accept responsibility, and asked the Court to "give

[him] a fair sentence for [his] mistakes." *Id*. Pg. ID 5458. Neither in his post-plea

letter to the Court or at his sentencing hearing did the Defendant ask to withdraw

his plea. In effect, he merely asked the Court to not consider the murder

conspiracy in imposing sentence. This would indicate that he has not met the

prejudice prong of *Hill* v. *Lockhart*, that is, that he would not have pled guilty, but

would have insisted on going to trial, in the absence of counsel's errors. The lack

of prejudice under the *Hill* standard is underscored by his statement at sentencing

that he "didn't have any other option besides signing because if I went to trial and

lost, I would be facing life." *Sentencing Transcript*, Pg. ID 5435.[2]

---

[2] It is well understood that guilty pleas are valid even though they are
entered into to avoid the risk of dire consequences. "In *North Carolina v. Alford*,

And even if counsel had failed to explain the import of the plea agreement to the Defendant, any prejudice from such failure was cured by the Court's thorough explanation of the relevant conduct provision at both the plea hearing and the sentencing.

The Defendant also suggests that his attorney was ineffective at sentencing for not showing that his co-conspirators considered him to have been a non-player. That claim is belied by the record. Counsel's argument included the following points about a wiretapped conversation between co-Defendants Amaya and Baquedano:

> "[Amaya is] trying to send a signal to Mr. Baquedano that there is some stuff related to the murder planning that he needs to pick up rom somebody and he's using Mr. Maravillas as an example of who he has to pick it up from. And that's what was confusing. But it's telling that in a conversation, Mr. Baquedano, who's obviously confused, says, 'Why are you talking about Rafael? What does he have to do with this?' And Mr. Amaya says nothing.

---

400 U.S. 25 (1970), the Supreme Court held that a guilty plea which was a voluntary and intelligent choice among alternatives available to the competently represented defendant, was not compelled within the meaning of the Fifth Amendment merely because the plea was entered to avoid the possibility of the death penalty." *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 582 (E.D. Mich. 2001). *See also Sivley v. Romanowski*, 2010 WL 565120, at *9 (W.D. Mich. 2010)("Furthermore, the fact that petitioner was faced with difficult, unattractive or distasteful options does not render his guilty plea involuntary. '[A] guilty plea is not rendered involuntary merely because it was entered to avoid harsh alternatives such as prosecution on additional charges.'")(quoting *United States v. Hussey*, 182 Fed.Appx. 150,152-53 (4th Cir.2006)).

"They hang up.  there's a subsequent conversation just a few minutes later, after Mr. Amaya is no longer with his wife, and he says, 'Listen, Franklin, forget about what I was saying about Rafael.  He's not there. I wasn't–I couldn't talk in front of my wife.  You need to pick this stuff up from somebody else.  It has nothing to do with Rafael.  I was just trying to get out of this conversation.'  So I think that exchange is telling, in terms of what Mr. amaya's acknowledgment that Mr. Maravillas is not involved in that aspect of what this is about."  *Sentencing Transcript* Pg. ID 5453-54.

Counsel also pointed out that another co-Defendant stated at his own

sentencing that Defendant had nothing to do with the murder:

**Defense Counsel**:   And from what I understand, I was not here, but my understanding is that Mr. Sierra-Rodriguez, who was sentenced yesterday by the Court, made some statement to the Court regarding Mr. Maravillas to the tune of, 'Listen, if I could do Mr. Maravillas' time, I would.  He got involved in something that – he didn't know how big it was." So–

**The Court**:  I think he said that Mr. Maravillas–that Mr. Maravillas was not involved in this case, in terms of the Colorado episode, if I recall.

**The AUSA:** Something along those lines, Your Honor, that he didn't have knowledge about–

**The Court:** Right.

**The AUSA**:  –what Mr. Sierra-Rodriguez was about to do.

**The Court**: Right.   *Id*. Pg. ID 5454-55.

Counsel argued for a variance from the Guidelines, suggesting that a range

of between 15 and 18 years would be appropriate.  *Id*. Pg. ID 5457. Although the

-12-

government asked for a sentence within the Guidelines range set forth in the Rule 11 agreement, he did acknowledge Defendant's "smaller role than the other co-conspirators in this case." *Id*. Pg. ID 5459.[3]

The Defendant is therefore incorrect that his attorney did not address his lack of actual knowledge of the planned murder, or the co-Defendant's exculpatory statement.

In summary, the Defendant's ineffective assistance claim fails the second prong–prejudice– of *Stickland* and *Hill*.  In addition, Defendant has not shown that his lawyer's conduct fell below an objective standard of reasonableness in negotiating a plea agreement that avoided the risk of a life sentence, and in convincing the Court to depart substantially from the Guidelines range in the Rule 11 agreement.

## B.    Amended Motion in Doc. #502

In his amended motion, Defendant challenges the Court's denial of his motions to suppress evidence of cell cite/ location data, GPS tracking data, and wire intercepts.  He argues that the Court's denial of his motions was incorrect, citing two cases that were pending in the Supreme Court at the time the amended

---

[3] The Court in fact departed, and imposed a sentence of 19 years.  *Id*. Pg. ID 5462.

motion was filed, but have since been decided, namely, *Carpenter v. United States*, 138 S.Ct. 2206 (2018), and *Dahda v. United States*, 138 S.Ct. 1491 (2018). He claims ineffective assistance of counsel, claiming that his attorney did not file an objection to the denial of his motion to suppress cell tower information, and did not investigate whether the wiretap applications complied with 18 U.S.C. § 2518(3), the issue in *Dahda*.

To the extent that Defendant challenges this Court's substantive rulings on the suppression motions, "[a] voluntary and unconditional guilty plea waives all nonjurisdictional defects in the proceedings." *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001); *see also United States v. Bell*, 350 F.3d 534, 535 (6th Cir. 2003).

In terms of the ineffective assistance of counsel issue, counsel's representation of Defendant spanned the years 2010 to 2012. Effective representation under the "performance" prong of *Strickland* does not require an attorney to anticipate a Supreme Court ruling six to eight years in the future. Nor is it required that an attorney file an "objection" to a Court's denial of a motion to suppress.

Finally, Defendant has made no argument that a granting of any of the motions to suppress would have resulted in the dismissal of the case, or would

-14-

have eliminated his risk of a life sentence, a risk that he specifically said he wished to avoid by pleading guilty. Defendant has not met neither the performance nor the prejudice prong of *Strickland/Hill*.

## IV.   CONCLUSION

I recommend that Defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. #481] and his amended motion [Doc. #502] both be DENIED.

Any objections to this Report and Recommendation must be filed  within fourteen (14) days of service of a copy hereof, including weekends and intervening holidays, as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991);  *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, including weekends and intervening holidays, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 17, 2018

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 17, 2018, electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager to the
Honorable R. Steven Whalen